IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

IN THE MATTER OF THE COMPLAINT OF COLONNA'S SHIPYARD, INC., AS OWNER PRO HAC VICE AND OPERATOR OF BARGE U 806, O.N., 1237946, FOR EXONERATION FROM OR LIMITATION OF LIABILITY

Limitation Plaintiff.

Civil Action No. 2:25-cv-706

**MEMORANDUM OPINION AND ORDER**

In certain admiralty cases, vessel owners may file a complaint in federal court under the Limitation of Liability Act. 46 U.S.C. §§ 30501–30. The Act gives vessel owners significant rights unavailable to other defendants, including the right to limit their liability to the post-casualty value of their vessel. *Id.* § 30523. But these rights come with an obligation. To avail himself of the benefits afforded by the Act, a vessel owner must file their complaint within six months of receiving written notice of a claim. *Id.* § 30529. Critically, not all written notice triggers this six-month deadline. Rather, the six-month clock only begins when a vessel owner receives written notice that is sufficient to put him on notice of a potential claim against him. This case centers on the question of when such written notice is adequate.

Pending before the Court is Claimant Kent Oakey's Motion to Dismiss Limitation Plaintiff Colonna's Shipyard, Inc.'s Complaint in Admiralty or, in the alternative, Motion for Summary Judgment ("Motion").[1] Dkt. No. 12. For the reasons set forth below, the Motion is GRANTED.

[1] Colonna's Shipyard also filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. Dkt. No. 23. The Court does not reach the merits of Colonna's Shipyard's motion.

## I. BACKGROUND

On September 30, 2023, Kenneth Oakey, an employee of Colonna's Shipyard, Inc. ("Colonna's Shipyard"), fell from a piece of equipment while working on a barge (the "Barge"), suffering numerous injuries from which he ultimately died. Dkt No. 1 ¶¶ 11, 17. On January 31, 2025, counsel for Kent Oakey, Administrator of the Estate of Kenneth Oakey (the "Estate"), sent a letter to counsel for Colonna's Shipyard. Dkt. No. 13-1 ("Estate's Letter"). The Estate's Letter, which is just over two pages long, begins "Please be advised that our firm has been retained by the Estate of Kenneth Oakey to pursue claims in tort arising out of his death . . . ." *Id*. Counsel for Colonna's Shipyard responded two weeks later. Dkt. No. 13-2 ("Colonna's Shipyard's Response").

Nearly nine months later, on October 21, 2025, Colonna's Shipyard was served with a lawsuit initiated by the Estate in the Circuit Court for the City of Norfolk, Virginia, asserting claims for negligence and seeking forty-five million dollars in damages. Dkt. No. 1 ¶ 21. A few weeks later, on November 3, 2025, Colonna's Shipyard filed the instant Complaint in Admiralty seeking exoneration from or limitation of liability for potential claims arising from the incident. *See generally id.* Colonna's Shipyard stipulated that the post-casualty value of the Barge was one million five hundred thousand dollars. Dkt. No. 10. The Estate timely answered and filed a Claim against Colonna's Shipyard.[2] Dkt. No. 11.

The Estate filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. Dkt. No. 12. In its Motion, the Estate argues this court lacks subject matter jurisdiction because Colonna's Shipyard failed to file its Complaint within six months of receiving written notice of a claim, or in the alternative, that no genuine dispute of material fact exists entitling the Estate to

[2] Marmac, LLC, d/b/a McDonough Marine Services, also timely answered and filed a Claim against Colonna's Shipyard seeking, if deemed liable, contribution, contractual indemnity, and attorney's fees and costs. Dkt. No. 17.

judgment under the Limitation Act as a matter of law. Dkt. No. 13, at 4–9. The Estate cites the Estate's Letter and Colonna's Shipyard's Response as evidence that Colonna's Shipyard's six-month filing clock began to run on January 31, 2025. Dkt. No. 13-1. In response, Colonna's Shipyard argues that the six-month filing period is not jurisdictional and that the Estate's Letter did not trigger the six-month filing deadline under the Limitation Act.[3] Dkt. No. 25. Specifically, Colonna's Shipyard contends, among other things, that the letter lacks indicia necessary to be characterized as a claim, in that the letter does not blame Colonna's Shipyard or the vessel; does not demand anything from Colonna's Shipyard; is not identified as a notice of claim; and does not indicate that the asserted claims would exceed the value of the vessel or quantify the value of claims. The Estate replied. Dkt. No. 29. Accordingly, the matter is ripe for adjudication, and the Court has determined that a hearing is unnecessary. E.D. Va. Loc. Civ. R. 7(J).

## II. LEGAL STANDARD

When ruling on a motion to dismiss, the Court, generally, "is not to consider matters outside the pleadings or resolve factual disputes." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). "However, under Rule 12(d) when ruling on a 12(b)(6) motion, it is within the Court's discretion to consider matters outside the pleadings, but if the Court does so, 'the motion must be treated as one for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Pennsylvania Int'l Educ. Serv. Grp., LLC v. Xie*, No. 1:14-cv-1203, 2015 WL 1119773, at *2 (E.D. Va. Mar. 11, 2015) (citation modified). "In general, district courts will make this conversion if the extra-pleading material is comprehensive and facilitates disposition of the action pursuant to Rule 56." *Id.* (citing 5C Wright & Miller's Federal Practice and Procedure § 1366 (3d ed. 1998)). "Otherwise,

[3] McDonough Marine Services advances the same arguments as Colonna's Shipyard. Dkt. No. 26.

when the extraneous material is inconclusive and not dispositive, district courts typically reject the conversion and resolve the motion pursuant to Rule 12(b)(6)." *Id.* (citing Wright & Miller, § 1366).

To decide the Motion, which turns exclusively on whether the Estate gave Colonna's Shipyard sufficient notice to trigger the six-month filing clock under the Limitation Act, the Court must consider only two pieces of extra-pleading material: the Estate's Letter, Dkt. No. 13-1, and Colonna's Shipyard's Response, Dkt. No. 13-2.[4] As explained below, the Court finds these letters are comprehensive and facilitate disposition of this action under Rule 56. The parties also agree that this matter is appropriately resolved at this stage on summary judgment. *See* Dkt. No. 13, at 9; Dkt. No. 25, at 7–23. Thus, the Court will treat the Motion as a motion for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "its existence or non-existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citations omitted).

The movant bears the initial burden of showing that there is no genuine issue of material fact. *Wai Man Tom*, 980 F.3d at 1037 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The nonmoving party must then establish that specific, material facts exist that would give rise to a genuine issue. *Id.* In reaching its decision, "the court must draw all reasonable inferences in favor

[4] Colonna's Shipyard also attached both letters to its opposition. Dkt. Nos. 25-1; 25-2.

of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

## III. ANALYSIS

### A. Section 30529(a) is a claim-processing rule, not a jurisdictional deadline

The Estate argues because Colonna's Shipyard did not file its Complaint within six months of its counsel receiving the Estate's Letter, the Court lacks subject matter jurisdiction, and this case must be dismissed. Dkt. No. 13, at 4–8. The Court previously addressed a similar jurisdictional challenge as the one the Estate levies here and held that the Limitation Act's time bar is not jurisdictional. *See In re Jackson Creek Marine, LLC*, No. 2:23-cv-115, 2023 WL 12311802, at *2 (E.D. Va. Nov. 29, 2023); *see also In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021) (holding Limitation Act time bar is not jurisdictional); *Martz v. Horazdovsky*, 33 F.4th 1157, 1163 (9th Cir. 2022) (same). For the same reasons as those stated in *In re Jackson Creek Marine*, the Court finds that Section 30529(a) of the Limitation Act is not a jurisdictional deadline.

Because Section 30529(a) is not jurisdictional, and is directing a vessel owner, *not* a judge or other public official, to act, the Court finds that Section 30529(a) must be a claim-processing rule. *See McIntosh v. United States*, 601 U.S. 330, 337 (2024) (citing *Dolan v. United States*, 560 U.S. 605, 610 (2010)). The text of the Act supports this conclusion as well. Section 30529(a) provides: "The action must be brought within 6 months after a claimant gives the owner written notice of a claim." This type of "filing deadline" is the "quintessential claim-processing rule" that the Supreme Court has previously recognized as a rule requiring a party to take certain procedural steps within a specified time. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435–42 (2011). Moreover, although the Court of Appeals for the Fourth Circuit has not yet ruled on this question, most circuit courts that have agree that § 30529(a) is a claim-processing rule. *See In re Seganti*, 153 F.4th 272, 278–79 (2d Cir. 2025); *Martz*, 33 F.4th at 1163; *In re Bonvillian*, 19 F.4th

at 793–94; *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1328–29 (11th Cir. 2019). *But see Cincinnati Gas & Elec. Co. v. Abel*, 533 F.2d 1001, 1003 (6th Cir. 1976) (treating Section 30529(a) as jurisdictional).

Because Section 30529(a) requires a vessel owner to commence a limitation action within six months of receiving written notice of a claim, the sole question is whether the Estate's Letter and Colonna's Shipyard's Response constitute sufficient notice of a claim to start the six-month filing clock under the Limitation Act. The Court finds that they do.

**B. The Estate's Letter and Colonna's Shipyard's Response, considered together, constitute written notice**

The Fourth Circuit held in *Standard Wholesale Phosphate & Acid Works v. Travelers Ins. Co.* that a letter constitutes written notice of a claim for purposes of the Limitation Act when it is "sufficient to give the petitioner all details of the situation with regard to the claim." 107 F.2d 373, 376 (4th Cir. 1939). In that case, the employer's insurance company mailed three letters to the vessel owner, each concerning a different potential claimant, and each stating in relevant part:

> This letter will advise you that we are the insurance carrier for [employer], whose employee, . . . was injured on September 2, 1938, under circumstances which we believe involve your responsibility.
>
> [Employee] has made claim for compensation against his employer, . . . under the Maryland Workmen's Compensation Act and, in accordance with the provisions of that Act, we are subrogated to any right which the injured person may have against you and, at the proper time, we shall look to you for reimbursement on account of any payments for either compensation benefits or medical treatment which we may be called upon to make in the case.

*Id.* at 375. After examining the letters, the Fourth Circuit concluded they "were undoubtedly written notices of claims within the meaning and intent of the statute." *Id*. at 376. The Fourth Circuit also noted that the vessel owner responded to the letters, acknowledging it had received them. *Id.*

Over fifty years later, in *Big Deal, Inc. v. Pouchie*, the Fourth Circuit, in an unpublished opinion, reaffirmed this standard. *See* 958 F.2d 367 (4th Cir. 1992). There, an injured employee's attorney sent a series of letters, two of which were sent to the vessel owner's attorney (or agent). *Id.* After examining the letters, the Fourth Circuit affirmed the district court's decision to grant summary judgment concluding the letters were "'sufficient to give the petitioner all details of the situation with regard to the claim.'" *Id.* (quoting *Standard Wholesale*, 107 F.2d at 376). The *Big Deal* court highlighted that the letters informed the vessel owner "of the date of the accident and referred it to the captain of the vessel for further details." *Id.* Based on this, the *Big Deal* court reasoned that the vessel owner "was able to perform its own investigation and to determine whether [claimant's] claim held sufficient merit so as to justify the expense of filing a petition to limit liability." *Id.*

Since *Big Deal*, the Fourth Circuit has not further addressed what constitutes adequate notice under the Limitation Act. However, courts in this district have adopted a holistic, case-specific approach when examining the sufficiency of written notice under the Act. *See In re Vulcan Constr. Materials, LLC*, 427 F. Supp. 3d 694 (E.D. Va. 2019); *Norfolk Dredging Co. v. Wiley*, 357 F. Supp. 2d 944 (E.D. Va. 2005). Under this approach, "a writing may constitute sufficient notice of a claim even if it is couched only in tentative terms, but in such a case the letter must be read in its entirety to determine whether it is too ambiguous or non-adversarial to constitute notice." *Norfolk Dredging*, 357 F. Supp. 2d at 948 (citation modified). Both *Vulcan Materials* and *Norfolk Dredging* examined a variety of factors, including the note's style and appearance of the note, whether the note blamed the vessel owner for the injuries, whether the note described the injuries in any detail, whether the author recommended that the vessel owner contact its insurer, whether the note referenced depositions or settlement negotiations, and whether or not the claim is quantified in a manner by which a vessel owner could know a claim may exceed the value of the

vessel or not. 427 F. Supp. 3d at 698–01; 357 F. Supp. 2d at 947–48. The Court concludes that while these factors can all be considered, they should not be considered as a checklist, but rather as informing the greater question, which is whether the correspondence was "sufficient to give [the vessel owner] all details of the situation with regard to the claim."[5] *Standard Wholesale*, 107 F.2d at 376. With this framing in mind, the Court analyzes the Estate's Letter and Colonna's Shipyard's Response.

1. The style and appearance of the Estate's Letter

The style and appearance of the Estate's Letter exude an adversarial tone. *See Vulcan Materials*, 427 F. Supp. 3d at 697. The letter is on "letterhead indicating that it was sent from a law firm" and includes the following subject line: "RE: Kent Oakey, Administrator of the Estate of Kenneth Oakey, Deceased, v. COLONNA'S SHIPYARD WEST, LLC." Dkt. No. 13-1, at 1; *see id.* at 698–99 (examining these factors and finding their absence indicative of "a tone of ambiguity and vagueness"). The letter also notes that two law firms have "been retained by the Estate of Kenneth Oakey to pursue claims in tort arising out of his death." Dkt. No. 13-1, at 1; *see Vulcan Materials*, 427 F. Supp. 3d at 698–99 (finding that no law firm being identified and only listing a "VSB No." and including "Esq." after a name, insufficient to identify the author as a lawyer was suggestive of "a tone of ambiguity and vagueness"). Finally, the letter is signed by the author, and his contact information is provided in the footer on the front page of the letter. Dkt. No. 13-1, at 1; *see Vulcan Materials*, 427 F. Supp. 3d at 698–99 (finding the lack of a signature and contact information "set a tone of ambiguity and vagueness"). Accordingly, the Court finds

---

5 In both *Standard Wholesale* and *Big Deal*, the Fourth Circuit did not limit its analysis to the initial letter sent by the injured party to the vessel owner and instead considered the entirety of the correspondence. 107 F.2d at 375–77; and 958 F.2d at 367. Accordingly, the Court will consider both the Estate's Letter and Colonna's Shipyard's Response in evaluating whether the Estate's Letter constitutes written notice of a claim under the Act.

that the style and appearance of the Estate's Letter "provide sufficient context that would put a recipient on notice of a potential claim." *Vulcan Materials*, 427 F. Supp. 3d at 698.

2. The substance of the Estate's Letter

Colonna's Shipyard argues the Estate's Letter was inadequate because it did not quantify the Estate's claim; did not specify against whom a claim may be filed; did not state a claim against the vessel, vessel owner, or Colonna's shipyard; did not assert any blame or wrongdoing against the vessel or the vessel owner; and was not addressed to the vessel owner. Dkt. No. 25, at 16–19. The Estate counters that courts do not "require notice letters to comply with a pre-ordained list of requirements before the Limitation Act's six-month filing deadline begins to run." Dkt. No. 29, at 5. The Court agrees with the Estate.

As to whether the letter asserts any blame against the vessel or the vessel owner, Colonna's Shipyard correctly notes that the letter does not explicitly blame Colonna's Shipyard or the Barge for Kenneth Oakey's death. But these magic words are not required. Reading the letter in its entirety, it is clear that the Estate intends to file a claim against Colonna's Shipyard. First, the subject line is stylized as a case caption for a filed lawsuit with the Estate on one side of the "v." and Colonna's Shipyard on the other. Dkt. No. 13-1, at 1. Next, the letter advises counsel for Colonna's Shipyard that two different law firms have been retained "to pursue claims in tort," that they are seeking additional information "prior to filing suit to identify all necessary parties as defendants," and request the preservation of "all evidence that may be relevant to the forthcoming litigation." *Id.*, at 1–2. Taken together, the Court is satisfied that the letter contains sufficient indicia of blame to put Colonna's Shipyard on notice of a potential claim.

Colonna's Shipyard also argues that because the letter was addressed to counsel for Colonna's Shipyard, it did not give the *vessel owner* written notice. Dkt. No. 25, at 19. The Court finds this argument unpersuasive. It is well settled that the agent of a vessel owner can receive

notice of a claim. *See Orion Marine*, 918 F.3d at 1333; *Doxsee Sea Clam Co., Inc. v. Brown*, 13 F.3d 550, 553–54 (2d Cir. 1994); *Diamond v. Beutel*, 247 F.2d 604, 607 (5th Cir. 1957). Here, it appears beyond dispute that counsel for Colonna's Shipyard was Colonna's Shipyard's agent. *See* Restatement (Third) of Agency §§ 3.01, 3.03 (A.L.I. 2006) (describing actual and apparent authority); *see also In re Kiewit Pac. Co.*, No. C93-4386, 1994 WL 446967, at *3 (N.D. Cal. Mar. 31, 1994) (noting that a letter sent by a claimant to a vessel owner's attorney was sufficient to constitute notice to the vessel owner). Indeed, the Court need not look any further than Colonna's Shipyard's Response for confirmation. The letter provides in relevant part:

> Re: *Kent Oakey, Administrator of the Estate of Kenneth Oakey, Deceased v. Colonna's Shipyard West, LLC.*
> . . .
> This responds to your letter dated January 31, 2025, advising of your representation of [the Estate]. . . . We confirm our representation of Colonna's Shipyard, Inc., Mr. Oakey's employer and owner *pro hac vice* of the vessel on which decedent was working at the time of the incident.
>
> . . . [W]e are taken aback to learn that your client now contemplates filing a lawsuit against Colonna's.

Dkt. No. 13-2, at 1; Dkt. No. 25-2, at 1. As the court in *In re Martin W. Stair* noted, when a vessel owner's attorney "acknowledges that there [i]s a potential claim, [that] alone should suggest that the [owner] received written notice of the claim." No. C07-5451, 2008 WL 114918, at *4 (W.D. Wa. Jan. 9, 2008).

Colonna's Shipyard's final attack to the sufficiency of the Estate's Letter rests on the Estate's failure to quantify its claim. Dkt. No. 25, at 4, 17–18 (arguing "writing *must* give notice of a reasonable possibility of a claim that will exceed the value of the vessel"). The Court finds this argument unavailing. Admittedly, there is some confusion as to what is required on this point. On the one hand, Fourth Circuit precedent suggests that a claimant is not required to provide the vessel owner with information as to the nature or extent of their injuries. In *Standard Wholesale*, the Fourth Circuit found letters which did not mention or quantify the claim in any manner or

provide any details about the injuries the claimants suffered to be "sufficient to give the [vessel owner] all details of the situation with regard to the claim." 107 F.2d at 375–76. Similarly, in *Big Deal*, the vessel owner argued—like Colonna's Shipyard—that it did not receive sufficient notice because the claimant "failed to provide information which would have led [the vessel owner] to conclude that the claim would have exceeded the value of the [vessel]." 958 F.2d 367, n.4. The Fourth Circuit rejected this argument, noting that "in [its] view, the [Limitation Act] does not impose any such burden on [claimants]" and opining that "the situation may be different if [the claimant] had affirmatively represented that his claim would not exceed the value of the vessel." *Id.* (citing *In re Morania Barge No. 190, Inc.*, 690 F.2d 32 (2d Cir. 1982)).

On the other hand, some courts—both district courts within this circuit and other circuit courts—have found some quantification of the claim to be necessary. *See, e.g., Norfolk Dredging*, 357 F. Supp. 2d at 947–48; *Vulcan Materials,* 427 F. Supp. 3d at 698–701; *In re Eckstein Marine Serv., L.L.C.*, 672 F.3d 310, 317 (5th Cir. 2012) (describing this aspect of the inquiry as "not particularly stringent"), *overruled in part on other grounds by In re Bonvillian*, 19 F.4th at 789; *Doxsee*, 13 F.3d at 554 (finding notice must "inform[] the vessel owner of an actual or potential claim which may exceed the value of the vessel"). In justification, these courts note that the vessel owner must do more than simply file a petition in federal court, he must also bear the expense of "fil[ing] security for the full value of his ship or surrender her to a trustee." *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586–87 (2d Cir. 1958) (Hand, L., concurring); *see also Morania Barge*, 690 F.2d at 34; *Vulcan Materials*, 427 F. Supp. 3d at 699–700.

The Court need not wade into this dispute. Here, the vessel is currently valued at $1,500,000. The Estate's Letter makes plain that the claim arises from the death of Kenneth Oakey. The nature of the claim—involving a death—and the value of the vessel are sufficient to put Colonna's Shipyard on notice that the claim may exceed the value of the vessel. *See In re RLB*

*Contracting, Inc.*, 773 F.3d 596, 606 (5th Cir. 2014) (concluding a vessel owner "should have realized that an action involving the death of a child would easily exceed" the value of the vessel), *overruled in part on other grounds by In re Bonvillian*, 19 F.4th at 789; *Martz*, 33 F.4th at 1168 (acknowledging reference to a claim arising from a child's death was "likely to exceed the value of the vessel" but finding the notice insufficient on other grounds). Simply put, Colonna's Shipyard should have realized that a wrongful death claim would almost certainly exceed the value of the Barge and acted accordingly by commencing a limitation action. Based on the foregoing, and making all reasonable inferences in Colonna's Shipyard's favor, the Court finds that as of February 14, 2025—the date of Colonna's Shipyard's Response—Colonna's Shipyard had received written notice of the Estate's claim to start the Act's six-month filing clock.

## IV. CONCLUSION

For the foregoing reasons, the Estate's Motion for Summary Judgment, Dkt. No. 12, is GRANTED. The Clerk is directed to send a copy of this Order to all counsel of record and close this case.

It is so ORDERED.

/s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: August 18, 2026